UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOHNNIE BONDS,

                    Plaintiff,

  -against-                                  05 CV 3109 (SJF)
                                                OPINION AND ORDER
SUFFOLK COUNTY SHERIFF'S
DEPARTMENT, PEDRO TORRES, Parole
Officer, JAY A. TINTER, Administrative Law
Judge, STATE OF NEW YORK DIVISION
OF PAROLE,

                    Defendants.
----------------------------------------X

FEUERSTEIN, J.

I.    Introduction

On June 28, 2005, *pro se* plaintiff Johnnie Bonds ("plaintiff") filed two § 1983 actions: one against the Suffolk County Sheriff's Department ("SCSD") and the other against Pedro Torres ("Torres"), Judge Jay Tinter and the New York State Division of Parole. On July 21, 2005, I issued an Order consolidating the actions under this docket number. On September 7, 2005, I issued an Order dismissing the complaint as to Judge Tinter and the New York State Division of Parole, and giving plaintiff thirty (30) days to file an Amended Complaint against SCSD and Torres in order to remedy the pleading deficiencies. I also granted plaintiff's request to proceed *in forma pauperis* for the purposes of this action.

On December 1, 2005, I issued an Order granting plaintiff until January 9, 2006, to file an Amended Complaint, and on December 6, 2005, I denied plaintiff's request to appoint counsel. On December 22, 2005, plaintiff filed his Amended Complaint (ECF Docket Entry No. 11).

1

II. Background

Plaintiff alleges that on the morning of September 12, 2004, while he was confined at the Suffolk County Jail, he was told by an employee of the SCSD to pack up his personal property because he was going to Rikers Island. (Application to Amend Complaint, dated Dec. 21, 2005 ["Amended Compl."]). Plaintiff and other inmates allegedly arrived at Rikers Island without their personal property and were unable to contact family, friends, church or the legal community. (Id. at 3). According to plaintiff, SCSD personnel failed to follow their own rules as they appear in the department's "Correctional Facility Rules and Regulations Hand Books." (Id. at 2).

Plaintiff further alleges that on December 11, 2003, Parole Officer Torres violated his constitutional rights by charging plaintiff with parole violations, giving false testimony and improperly issuing a warrant. (Id. at 4-5). The Administrative Law Judge found him guilty of violating the terms of his parole and after plaintiff refused to enter a drug program treatment program, he was subsequently sentenced to a term of imprisonment for one year. (Id.).

The Amended Complaint seeks class action certification and damages.

III. Discussion

A. Plaintiff's Pleadings

A pro se plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Indeed, a court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d

2

Cir. 1994)). Nonetheless, a pro se plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quotations omitted).

B. § 1983 Claims

42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Thus, to state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

1. Claims Against the SCSD

A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat superior* theory for their employees' torts. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978); Brewster v. Nassau County, 349 F. Supp. 2d 540, 548-49 (E.D.N.Y. 2004). However, a municipal entity may be liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers" or "governmental 'custom even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." Monell, 436 U.S. at 690-91.

To establish the existence of a municipal policy or custom, the plaintiff must allege (1)

3

the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)); see also Davis v. Lynbrook Police Dep't., 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

Municipal policy may be inferred from informal acts or omissions of supervisory municipal officials, but a single incident involving an employee below the policymaking level will generally not suffice to support an inference of a municipal custom or policy. Vann v. City of New York, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). In some exceptional circumstances, the single event giving rise to litigation may, by itself, suffice to show a "policy" (Turpin v. Mallet, 619 F.2d 196, 202 (2d Cir. 1980)), but a municipality cannot be liable for such an event unless it is so severe as to reach the level of 'gross negligence.' Brewster, 349 F. Supp. 2d at 549, n. 3 (citations and quotations omitted). Plaintiff has failed to allege any practice or custom endorsed by the SCSD with respect to the alleged violations of his constitutional rights. Further, plaintiff has not made any allegation that the behavior of the SCSD employees is part of a recurring pattern, or has previously been the subject of complaints. Brewster, 349 F. Supp. 2d at 549. Although federal courts are not permitted to apply a heightened pleading standard in civil rights cases alleging municipal liability

under § 1983 (Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), at least a bare allegation that the alleged individual conduct conformed to official policy is required. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Moreover, plaintiff's claim should not be adjudicated in this court. Plaintiff alleges that his rights were violated by the alleged taking of his property, including "toothbrush, toothpaste, change of underwear, shower shoes, writing materials, bibles . . . personal pictures, address books, along with all legal papers." (Amended Compl. at 2). The Supreme Court has held that property interests are not created by the federal Constitution, but are creatures of the independent sources of law, such as state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A court must look to state law remedies to determine whether a means of redress exists to satisfy the requirements of procedural due process. Gill v. Stella, 845 F. Supp. 94, 101 (E.D.N.Y. 1994) (citing Parratt v. Taylor, 451 U.S. 527 (1981)). A state authorized post-deprivation hearing that "offers a full and meaningful hearing to the plaintiff suffices for due process purposes." Id. See Tigner v. State of New York Department of Corrections, 559 F. Supp. 25, 27 (W.D.N.Y. 1983) (where prisoner's $5,000 bonds were lost, prisoner's due process claim was dismissed because state law offered adequate post-deprivation hearing by allowing prisoner to bring suit in New York State Court of Claims). Here, plaintiff can bring a suit in the New York State Court of Claims, and therefore, he has not been deprived of his property without due process of law. Plaintiff's Section 1983 claim is, therefore, dismissed against this defendant.

2. Claims Against Torres

Plaintiff asserts that Torres gave false testimony regarding a parole violation and improperly issued a warrant in a case where Torres himself furnished the report. The Supreme

Court has adopted a functional approach to determine the level of immunity afforded governmental officials. See Mitchell v. Forsyth, 472 U.S. 511, 521 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 810 (1982). If the official's actions and duties are judicial or prosecutorial in nature, he is afforded absolute immunity; if the duties are executive or administrative, he is afforded only qualified immunity. Stewart v. Lattanzi, 832 F.2d 12, 13 (2d Cir. 1987). "[A]bsolute immunity is of a 'rare and exceptional character.'" Barrett v. United States, 798 F.2d 565, 571 (2d Cir. 1986) (quoting Cleavinger v. Saxner, 474 U.S. 193, 202 (1985)); Dorman v. Higgins, 821 F.2d 133, 136 (2d Cir. 1987).

In Stewart, 832 F.2d at 13, the Second Circuit reversed dismissal of a Section 1983 case against parole officers, stating that, "[s]ome factual inquiry must be made to determine whether the duties of the defendants were judicial or prosecutorial in nature entitling them . . . to absolute immunity. Alternatively, this factual inquiry may show their duties to be administrative in nature, entitling the defendants to qualified immunity." Thus, while parole officers are entitled to absolute immunity in initiating parole revocation proceedings and presenting the case for revocation to hearing officers, there is no absolute immunity for a parole officer who recommends that a warrant be issued for a parolee's arrest because the function is administrative and not integrally related to the judicial process. Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998). See also Erwin v. Russi, 97 Civ. 5818, 1998 U.S. Dist. LEXIS 12385, at *9 (S.D.N.Y. Aug. 11, 1998) (finding that a parole officer who prepared a parole violation report and recommended issuing an arrest warrant is not entitled to absolute immunity). Plaintiff will need to show that Torres's role was investigatory or administrative, not prosecutorial. If Torres is entitled to qualified immunity, it will only be provided if his "conduct did not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) (citing Harlow, 457 U.S. at 818). Reading plaintiff's submission very liberally, I find that he has a viable complaint as to this defendant.

    C.    Class Action

Plaintiff seeks certification to proceed as a class action. Federal Rule 23(a)(3)'s typicality requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). Plaintiff has not shown that the other potential class members suffered from the same unlawful conduct allegedly committed by Torres. Plaintiff's motion for a class action does not comply with Fed. R. Civ. P. 23 and it is therefore denied. As such, plaintiff's motion to sever the cases in order to bring a class action is also denied.

    D.    Appointment of Counsel

Plaintiff's motion for the appointment of counsel is denied for the reasons stated in the Order dated December 1, 2005.

IV.    Conclusion

For the reasons stated above, plaintiff's application to amend his complaint against Torres is accepted by the Court. Therefore, pages four and five (Part II on page four through section c on page five) as well as pages seven and eight of Document 11 on ECF will be deemed the Amended Complaint. The Clerk of the Court is directed to serve copies of the Summons, Amended Complaint, and this Order upon Parole Officer Pedro Torres. Torres is directed to answer the complaint.

IT IS SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: December 5, 2006
       Central Islip, NY

Copy To:

Johnnie Bonds
220 Veterans Memorial Highway
Hauppauge, NY 11788